UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
-----------------------------------------------------------------X
ELI EICHENBLATT, *Individually and Derivatively*
*as a shareholder in Mayore Industries, Inc., and*
*Mayore International, Inc.*,

                            Plaintiff,

                  -against-

NAFTALI KUGEL, MAYORE INDUSTRIES,
INC., and MAYORE INTERNATIONAL INC.,

                        Defendants.
-----------------------------------------------------------------X

**REPORT & RECOMMENDATION**
**17 CV 559 (DLI)(LB)**

**BLOOM, United States Magistrate Judge:**

       Plaintiff, Eli Eichenblatt, brings this diversity action for breach of contract and breach of fiduciary duty against defendants Naftali Kugel ("Kugel"), Mayore Industries, Inc. ("MII"), and Mayore International Inc. ("International"), as an investor and minority shareholder in MII and International. Despite proper service of the summons and complaint, defendants have failed to plead or otherwise defend the action. ECF No. 10. Plaintiff now moves for a default judgment pursuant to Rule 55(b)(2) of the Federal Rules of Civil Procedure. ECF No. 12. The Honorable Dora L. Irizarry referred plaintiff's motion for a default judgment to me for a Report and Recommendation in accordance with 28 U.S.C. § 636(b). For the reasons set forth below, it is respectfully recommended that plaintiff's motion for a default judgment should be granted in part and denied in part, and judgment should be entered against defendants for $139,789.38.

## PROCEDURAL HISTORY

       On January 31, 2017, plaintiff, a citizen of the State of Florida, commenced this action for compensatory and punitive damages, as well as equitable and injunctive relief, against Kugel, a citizen of the State of New York, and MII and International, both New York State corporations.

ECF No. 1 ("Compl.") ¶¶ 2-4, 6. On May 9, 2017, the Clerk of Court entered a certificate of default as to the three named defendants, who "failed to appear or otherwise defend this action." ECF No. 10. Plaintiff filed a Motion for a Default Judgment against the three defendants, ECF Nos. 11-12, which was referred to me for a Report and Recommendation.

## BACKGROUND

The facts described herein are drawn from the uncontested allegations in plaintiff's complaint and are taken as true for purposes of deciding this motion. See Transatlantic Marine Claims Agency, Inc. v. Ace Shipping Corp., 109 F.3d 105, 108 (2d Cir. 1997) (deeming well-pleaded allegations in complaint admitted on a motion for a default judgment). This civil action arises from a series of agreements made between the parties on November 18, 2015. The five documents, all dated November 18, 2015, include: (1) a Promissory Note (the "Note"), which memorialized a $100,000 loan from plaintiff to Kugel and MII (Compl. Exh. D); (2) an Independent Contractor Consulting Agreement (the "I.C. Agreement") that granted plaintiff fifteen-percent (15%) equity in MII (Compl. Exh. C); (3) an Intellectual Property Assignment Agreement (the "I.P. Assignment"), which Kugel made in connection with the Note to convey his intellectual property interests to International (Compl. Exh. B); (4) the Organizational Action by Sole Incorporator of International ("International's Organizational Action") that decrees International's resolution to adopt the loan transaction and MII's equity issuance to plaintiff (Compl. Exh. E); and (5) International's Bylaws (the "Bylaws"), which delineated Kugel's fiduciary duty to report certain financial information to shareholders (Compl. Exh. E).

The complaint and moving papers do not explain plaintiff's relationship to defendant prior to this series of agreements or why plaintiff chose to loan $100,000 to Kugel and MII. We know that Kugel "is a commercial artist [who] specializ[es] in product design and related intellectual

property." Compl. ¶ 11. At all relevant times, Kugel served as CEO, Secretary, the sole Director, Chairman of the Board, owner, majority shareholder, and operator of both MII and International. Compl. ¶¶ 1, 5, 7. Kugel organized MII on December 17, 2010. Compl. ¶¶ 4, 10. To encourage plaintiff to invest in MII, Kugel organized International on or about October 30, 2015, "to assume the assets and liabilities previously owned by Kugel and MII," including valuable intellectual property that Kugel represented was worth approximately $2,000,000. Compl. ¶¶ 6, 11, 13. Kugel produced "a list of MII's receivables and equity interests" with a purported value in excess of $1,680,000 to plaintiff to present MII as a "valuable entity" with "substantial assets."[1] Compl. ¶¶ 1, 12. Kugel transferred his intellectual property assets to International in consideration for plaintiff's loan on November 18, 2015; the same day the parties also executed the Note, initiated the I.C. Agreement that granted plaintiff fifteen-percent (15%) equity in MII, and adopted the Bylaws. Compl. ¶ 14. After Kugel executed the Note for plaintiff's $100,000 investment loan, International ratified these actions through corporate resolution and assumed the Note's obligations.[2] Compl. ¶¶ 17-18, Exhs. D, E.

Under the terms of the Note, Kugel owed plaintiff an initial payment of $50,000 by November 18, 2016, and a final payment for the $50,000 balance, plus 2.57% interest, six-months later. Compl. ¶ 21. Kugel has not paid plaintiff any amount. Compl. ¶ 27. Plaintiff made many

---

[1] The Court notes at the outset that this document, filed as Exhibit B to the instant motion, is nothing more than one typed page listing various entities and receivables. Plaintiff has provided no additional proof that MII actually held these receivables and equity interests. Plaintiff may never have received other documents to substantiate the information contained on this page of "Receivables." While plaintiff may have decided that this single page was enough to invest, it is not sufficient proof for the Court to find that MII actually held $1.68 million in equity interests, or that Kugel and MII owned $2 million in intellectual property for that matter. It is the plaintiff's burden on a motion for a default judgment to *prove* the amount of damages sought. See Credit Lyonnais Securities (USA), Inc. v. Alcantara, 183 F.3d 151, 155 (2d Cir. 1999) ("Even when a default judgment is warranted based on a party's failure to defend, the allegations in the complaint with respect to the amount of the damages are not deemed true.")

[2] Plaintiff executed two investment checks: a $20,000 check to Kugel, dated October 1, 2015, which MII subsequently assumed and International ratified "as a corporate loan, pursuant to the terms of the Note" and an $80,000 check to International, dated November 10, 2015. (Compl. ¶¶ 19-20, Exh. F.)

unreciprocated attempts to communicate with Kugel. Compl. ¶¶ 5, 25. Finally, on November 22,

2016, plaintiff received an email from Kugel that stated:

> "I wanted you to know that it is not . . . because I underestimate the importance of returning the money I owe to you . . . I think about it with dismay every single day knowing that I will not be able to return it promptly on time . . . nor do I plan to neglect my responsibility towards you . . . [I] have every intention of returning the money in full.
>
> I am totally aware and fully sympathize with your rightfulness to recover the mon[ies] that I owe to you, I also intend to pay to you in full as soon as I can, unfortunately at the moment my situation is not able to facilitate such.
>
> I am aware of the fact that you can take legal action, however I do not own any properties or valuables of any sort and I am embarrassed to remind you that even the best lawyer in the world cannot get water out of a rock . . .
>
> It is obviously unrealistic for me to think that I can return [any of the money to you] in lump sum right away, and therefore, as I earn money I will make payments to you . . . I have been told that this might take a while . . ."

Compl. ¶ 24, Exh. F. Plaintiff alleges Kugel's email served as a repudiation of his obligations

under the Note. Compl. ¶ 24. Plaintiff received a second, similar email from Kugel on March 6,

2017, after plaintiff commenced this action, which need not be quoted here. Pl. Motion, Ex. J.

> A Late Payment Penalty provision in the Note provides that:
>
> "Should Borrowers fail to make the Initial Payment to Lender by the date that is thirty (30) days after the Initial Payment Date, then Borrower shall be entitled to receive, as a penalty payment in respect of such late payment, stock in [MII] in an amount equal to five percent (5%) of the then outstanding common stock [MII] plus interest of fifteen percent (15%) on the unpaid principal. Should Borrowers fail to make the Final Payment to Lender by the date that is thirty (30) days after the Final Payment Date, then Borrower shall be entitled to receive, as a penalty payment in respect of such late payment, stock in [MII] in an amount equal to five percent (5%) of the then outstanding common stock of [MII] plus interest of fifteen percent (15%) on the unpaid principal."

Compl. ¶ 22. With Kugel's default, plaintiff stood to gain ten-percent (10%) interest in MII, in

addition to the fifteen-percent (15%) interest initially granted in the I.C. Agreement. Compl. Exh.

C. In the event of an uncured payment default, the Note's Confession of Judgment clause also

4

authorizes plaintiff "to appear for [Kugel] and to confess judgment against [him] . . . for the full amount of the Note (including principal sum, accrued interest, charges and fees), plus court costs and attorneys' fees equal to 25% of the amount due." Compl. ¶ 33.

Kugel's breach of contract arises from his failure to repay the loan on the initial and final payment dates specified in the Note. Compl. ¶ 24. Plaintiff seeks damages equal to the unpaid principal of $100,000, accrued contractual and default interest at rates established in the Note, court costs and attorney's fees, as well as a declaratory judgment that plaintiff is a twenty-five percent (25%) shareholder in MII and International.[3] Compl. ¶¶ 34, 40, 44-45. Plaintiff seeks specific performance through an order requiring defendants to issue plaintiff "membership shares certificates to that effect." Pl. Motion ¶ 33.

Additionally, as a minority shareholder in MII and International, plaintiff brings individual and derivative claims for breach of fiduciary duty against Kugel under New York Business Corporate Law ("N.Y. BCL") §§ 624 and 720. Compl. ¶ 54. Plaintiff's individual claim arises from Kugel's failure to produce an annual "income statement, balance sheet[s], and state and federal income tax forms," or make required financial disclosures to plaintiff as a minority-shareholder. Compl. ¶¶ 28-29, Exh. E. Plaintiff's derivative claim is premised on Kugel's breach of his duty to "act in the best interests of the corporations and not to waste, divert, or dissipate corporate assets" through "malfeasance and misfeasance." Compl. ¶¶ 52-53. Plaintiff believes that Kugel continues to use the intellectual property assigned to International for Kugel's own personal benefit "at the expense of International and plaintiff's rights as an investor and minority shareholder," however, he provides no facts to support that conclusion. Compl. ¶ 26.

---

[3] International remains active, but Kugel dissolved MII by proclamation on August 31, 2016. Compl. ¶ 26.

Under his claim for breach of fiduciary duty, plaintiff seeks $2,000,000 derivatively, representative of International's alleged total value, and $500,000 individually, representative of the alleged value of plaintiff's twenty-five percent (25%) equity interest. Pl. Motion ¶ 34. Plaintiff further seeks a declaratory judgment and specific performance requiring Kugel's removal as director and officer of defendant corporations under N.Y. BCL §§ 706(d) and 716(c), enjoining defendant from further waste or diversion of corporate assets, and punitive damages. Compl. ¶ 34, 56, 65; Pl. Motion ¶ 35. Finally, plaintiff brings a separate claim for an accounting of MII and International's corporate assets and liabilities under N.Y. BCL §§ 624(d) and (f). Compl. ¶ 55; Pl. Motion ¶ 36. Plaintiff seeks all relief and "judgment against defendants, jointly and severally." Compl. ¶ 13.

## DISCUSSION

### I.    Legal Standard

Rule 55 of the Federal Rules of Civil Procedure establishes the two-step process for a plaintiff to obtain a default judgment. First, "[w]hen a party against whom judgment for affirmative relief is sought has failed to plead or otherwise defend, and that failure is shown by affidavit or otherwise, the clerk must enter the party's default." Fed. R. Civ. P. 55(a). A plaintiff may then move for a default judgment after a default has been entered against a defendant. Fed. R. Civ. P. 55(b)(2). If defendants fail to appear or fail to move to set aside the default under Rule 55(c), the Court may enter a default judgment on plaintiff's motion. Fed. R. Civ. P. 55(b)(2).

In light of the Second Circuit's "oft-stated preference for resolving disputes on the merits," default judgments are "generally disfavored." Enron Oil Corp. v. Diakuhara, 10 F.3d 90, 95–96 (2d Cir. 1993). "Accordingly, plaintiff is not entitled to a default judgment as a matter of right simply because a party is in default." Finkel v. Universal Elec. Corp., 970 F.Supp.2d 108, 118

(E.D.N.Y. 2013) (citing Erwin DeMarino Trucking Co. v. Jackson, 838 F.Supp. 160, 162 (S.D.N.Y. 1993) (courts are required to "supervise default judgments with extreme care to avoid miscarriages of justice.")). On a motion for a default judgment, the Court "deems all the well-pleaded allegations in the pleadings to be admitted." Transatlantic, 109 F.3d at 108. Regardless of the assumption of truth, the Court has a "responsibility to ensure that the factual allegations, accepted as true, provide a proper basis for liability and relief." Rolls-Royce PLC v. Rolls-Royce USA, Inc., 688 F.Supp.2d 150, 153 (E.D.N.Y. 2010) (citing Au Bon Pain Corp. v. Artect, Inc., 653 F.2d 61, 65 (2d Cir. 1981)). In other words, "it remains for the court to consider whether the unchallenged facts constitute a legitimate cause of action, since a party in default does not admit conclusions of law." Id. (quoting Leider v. Ralfe, No. 01 Civ. 3137 (HB)(FM), 2004 WL 1773330, at *7 (S.D.N.Y. July 30, 2004)). Even if the admitted facts establish defendant's liability, the Court must, nevertheless, determine the amount of damages due. Credit Lyonnais Secs. (USA), Inc. v. Alcantara, 183 F.3d 151, 155 (2d Cir. 1999) (citing Transatlantic, 109 F.3d at 111).

## II.      Liability

Plaintiff alleges that International is jointly and severally liable with Kugel and MII for damages based on the five agreements executed on November 18, 2015. The terms of the Note provide that Kugel and MII are jointly and severally liable for repayment of the $100,000 loan, plus interest. Compl. Exh. D. The Note further provides that this obligation binds any assigns of MII and Kugel. Id. ("The rights and obligations of the Borrowers . . . shall be binding upon and benefit the successors [and] assigns."). The I.P. Assignment, which Kugel executed in connection with the Note, transferred Kugel's "right, title and interest in all intellectual property" to International as Kugel's assignee. Compl. Exh. B ("Assignor [Kugel] hereby irrevocably conveys, transfers and assigns to Assignee [International] all of Assignor's right, title and interest in and to

all intellectual property . . . currently owned by Assignor."). In addition, "the $100,000 borrowing, equity issuance and other Corporation transactions reflected in the [Note] transaction documents . . . [were] approved and ratified in all respects" by International's Organizational Action. Compl. Exh. E. That is, International "approved and ratified in all respects" the "$100,000 borrowing" pursuant to the terms of the Note that was attached as Exhibit B to the International's Organizations Action statement. Id. Therefore, in light of this evidence and taking plaintiff's statement of facts as admitted for the purposes of this motion, I respectfully recommend that the Court find that International is jointly and severally liable with Kugel and MII for plaintiff's damages under the Note.

A.  Breach of Contract

The Court must make an initial determination as to the law that governs plaintiff's breach of contract claim. See D'Amato v. Five Star Reporting, Inc., 80 F.Supp.3d 395, 407 (E.D.N.Y. 2015). A federal court sitting in diversity applies the choice-of-law rules of the forum state. See Bigio v. Coca-Cola Co., 675 F.3d 163, 169 (2d Cir. 2012) (affirming application of New York State's choice-of-law rules). New York courts generally honor choice-of-law provisions within agreements that underlie contract disputes if the contractual choice-of-law provision possesses some relationship to the parties or to the agreement itself. Moses v. Apple Hosp. Reit Inc., No. 14-CV-3131 (DLI)(SMG), 2015 WL 1014327, at *4 (E.D.N.Y. Mar. 9, 2015) ("When a contract contains a choice-of-law provision, New York applies the law of the state agreed to by the parties in the contract." (internal citations omitted)); See Welsbach Elec. Corp. v. MasTec N. Am., Inc., 859 N.E.2d 498, 500 (N.Y. Ct. App. 2006) ("Courts will enforce a choice-of-law clause so long as the chosen law bears a reasonable relationship to the parties or the transaction.").

The choice-of-law provision in the Note establishes that California law governs here. Compl. Exh. D. The I.C. Agreement and plaintiff's $20,000 check both reflect the Los Angeles address where plaintiff resided when he entered these agreements with Kugel, demonstrating that plaintiff claimed some relationship to the State of California when the parties executed the Note. Compl. Exhs. C, F. Furthermore, the inclusion of a second choice-of-law provision in the I.C. agreement, which also includes a California choice-of-law provision, suggests these choices were intentional. Compl. Exh. C. Therefore, I find that California law governs plaintiff's breach of contract claim in this action.

To establish breach of contract under California law, a plaintiff must show: "(1) the existence of a contract, (2) plaintiff's performance or excuse for nonperformance, (3) defendant's breach, and (4) resulting damage to the plaintiff." Reinhardt v. Gemini Motor Transp., 879 F. Supp. 2d 1138, 1143 (E.D. Cal. 2012). The first element is clearly met, as the Note between plaintiff and Kugel qualifies as a binding contract that establishes both a late payment penalty and Kugel's confession of judgment in the event of default.  Compl. ¶¶ 22, 33, Exh D. The second element is satisfied by plaintiff's investment of $100,000 with Kugel, as evidenced by the Note and proof of payment in the form of two checks for $80,000 and $20,000. Compl. ¶¶ 19-20, Exh F.

In the November 22, 2016 email that Kugel sent to plaintiff, he acknowledged his failure to meet the Note's repayment terms and stated that he would not be able to do so for some time. Compl. ¶ 24, Exh. F. California law provides that a party's repudiation of a contractual agreement may be express or implied. See Inamed Corp. v. Kuzmak, 275 F.Supp.2d 1100, 1130 (C.D. Cal. 2002), affirmed, 64 F.App'x 241 (Fed. Cir. 2003) ("An anticipatory breach occurs when a party expressly and unequivocally refuses to perform, or when its conduct places the party in a position where it cannot substantially perform."). Kugel's email is sufficient to establish his express

repudiation of his repayment obligations under the Note. Kugel's failure to repay any of the principal balance or contractual and default interest, as evidenced by his email admissions, satisfies the third and fourth elements. See Davis v. Carrington, No. CV11-818 (SJO)(AGRx), 2011 WL 13220131, at *2 (C.D. Cal. Aug. 22, 2011) (holding that the plaintiff adequately pled breach of contract by providing evidence of valid written agreements, the plaintiff's investment, the defendants' failure to return the plaintiff's investment, and the plaintiff's resulting injury).

In the instant case, plaintiff performed his obligations under the contract by executing two checks to Kugel totaling $100,000. Plaintiff provides the Court with evidence of his investment and Kugel's failure to comply with the Note's repayment schedule.[4] Therefore, it is respectfully recommended that the Court should grant plaintiff's motion for a default judgment on his breach of contract claim, and hold all defendants jointly and severally liable for Kugel's breach. See DKN Holdings LLC v. Faerber, 352 P.3d 378, 383 (Cal. July 13, 2015) ("At common law, when multiple parties promised the same performance, they were presumed to be jointly obligated absent a clear indication otherwise.").

### B. Breach of Fiduciary Duty

Plaintiff also makes a motion for a default judgment against Kugel for breach of fiduciary duty. Plaintiff brings these claims individually and derivatively as a shareholder of MII and International, and not on the basis of the Note agreement. Compl. ¶ 49. Therefore, the California choice-of-law provision in the Note is not controlling as to plaintiff's claim for breach of fiduciary duty. Under New York law's choice-of-law rules, "the law of the state of incorporation governs an allegation of breach of fiduciary duty owed to a corporation." Moses, No. 14-CV-3131 (DLI) (SMG), 2015 WL 1014327, at *4 (E.D.N.Y. Mar. 9, 2015) (quoting Walton v. Morgan Stanley &

---

[4] Furthermore, the Note binds both Kugel and MII, and International's Organizational Action "approved and ratified" the $100,000 loan. Compl., Exhs. D & E.

<u>Co. Inc.</u>, 623 F.2d 796, 798 n.3 (2d Cir. 1980)). The I.C. Agreement, which established plaintiff as a minority-shareholder in MII, contains a California choice-of-law provision. Compl. Exh. C. However, nothing indicates the parties' intent for this provision to govern tort claims arising from either breach of the I.C. Agreement or duties established in International's Bylaws. See <u>BBS Norwalk One, Inc. v. Raccolta, Inc.</u>, 60 F.Supp.2d 123, 128–29 (S.D.N.Y. 1999), <u>affirmed</u>, 205 F.3d 1321 (2d Cir. 2000) (holding that contractual choice-of-law provisions do not ordinarily bind tort claims and finding the scope of a similar provision too narrow to govern a tort claim that arose under the same agreement). MII and International were incorporated under New York Corporate Law. Compl. ¶¶ 4, 6. Thus, New York law applies to plaintiff's breach of fiduciary duty claims.

Plaintiff brings this claim for breach of fiduciary duty both as an individual and a derivative shareholder.[5] Plaintiff sues individually to vindicate his right as a shareholder to receive required financial reports from Kugel. Compl. ¶ 49-50. Plaintiff also sues derivatively to protect the corporate interests of MII and International from Kugel's "malfeasance and misfeasance," which plaintiff claims caused the loss of "intellectual property worth, according to Kugel, in excess of $2 million." Compl. ¶¶ 52-54. Individually, plaintiff seeks damages of $500,000 based on the alleged value of his twenty-five percent (25%) equity in MII and International. Pl. Motion ¶ 34. Derivatively, he seeks the corporations' total alleged $2,000,000 value, as well as: (1) injunctive relief to enjoin Kugel from causing further corporate waste; (2) an order pursuant to N.Y. BCL §§ 706(d) and 716(c) removing Kugel as director and officer; and (3) punitive damages. Compl. ¶¶ 54, 56, 58. Plaintiff also brings a claim for an accounting of MII and International's records. Compl. ¶ 55.

---

[5] Minority shareholders may bring individual and derivative actions against corporate directors and officers. See <u>Stair v. Calhoun</u>, No. 12-CV-6121(SIL), 2016 WL 4991538, at *6 (E.D.N.Y. Sept. 16, 2016) (holding that minority-shareholders have statutory standing to sue individually and derivatively); <u>see also</u> N.Y. Bus Corp Law §§ 626, 720.

In order to prevail on a breach of fiduciary duty claim, a plaintiff must establish the existence of (1) a relationship that gives rise to a fiduciary duty from defendant to plaintiff; (2) one or more breaches of that duty by defendant; and (3) damage to plaintiff caused by the breach. F.D.I.C. v. Drysdale, No. 10-CV-4778 (NG)(MDG), 2013 WL 5965723, at *3 (E.D.N.Y. Nov. 7, 2013) (citing First Nat'l Bank of Arizona v. Nat'l Lending Corp., No. 06-CV-2768, 2011 WL 1315998, at *9 (E.D.N.Y. 2011)). Assuming for purposes of this motion that plaintiff meets the first prong of a fiduciary duty claim,[6] plaintiff fails to satisfy the second and third.

### 1. Individual Claim

Although Kugel breached individual reporting duties under the Bylaws, plaintiff's individual breach of fiduciary duty claim fails on the third prong. Compl. ¶¶ 28-29. Plaintiff fails to show that he suffered harm separate from the injuries allegedly incurred by the corporations. See Barry v. Curtin, 993 F.Supp.2d 347, 353 (E.D.N.Y. 2014) (finding a complaint's allegations subject to dismissal when a shareholder's individual and derivative rights are confused); see also Mecca v. Lennon, No. 16-CV-1414, 2017 WL 1410790, at *4 (E.D.N.Y. April 18, 2017) ("It is 'well-settled that shareholders lack standing to assert individual clams based on injury to the corporation.'" (quoting Baltus-Micahelson v. Credit Suisse First Boston, LLC, 116 Fed.Appx. 308, 309 (2d Cir. 2004)). The $500,000 plaintiff seeks as a result of Kugel's individual breach represents a quarter of the $2,000,000 sought under plaintiff's derivative action.[7] Pl. Motion ¶ 34.

---

[6] In International's Organizational Action, International approved and ratified the equity issuances MII made to plaintiff in the I.C. Agreement and the Note, i.e. the "Note transaction documents." Compl. Exh. E. The Bylaws establish Kugel's independent duty to make certain financial disclosures to plaintiff and New York courts recognize a shareholder's right to sue derivatively to protect corporate interests. Compl. ¶ 28, Exh. E. See Amfesco Indus., Inc. v. Greenblatt, 568 N.Y.S.2d 593 (App. Div. 1st Dep't 1991).

[7] In his motion for a default judgment, plaintiff seeks $500,000 in individual damages separate from the $2,000,000 sought on his derivative claim, though his complaint only seeks $2,000,000 for defendant's alleged breach of fiduciary duty. Compl. ¶ 54; Pl. Motion ¶ 34. This revision implies plaintiff chose to request separate individual damages as an afterthought and supports the conclusion that plaintiff actually seeks damages attributable to the corporations. See Cortes v. 3A N. Park Ave Rest Corp., 998 N.Y.S.2d 797, 816-17 (N.Y. Sup. 2014) (internal citations omitted) (finding allegations that an officer diverted assets to enrich themselves only sufficient to assert derivative standing).

Thus, plaintiff fails to establish an individual cause of action for breach of fiduciary duty because he only claims corporate damages.

### 2.   *Derivative Claim*

Moreover, plaintiff fails to plead factual allegations sufficient to establish a derivative claim for breach of fiduciary duty. The complaint contains only conclusory allegations that Kugel's conduct caused the alleged corporate harms, specifically waste of corporate assets.[8] Plaintiff's allegations fail to establish the second and third elements of a claim for breach of fiduciary duty. First, to prove corporate waste, plaintiff must show that the corporate officer used corporate assets in a way "so far opposed to the true interests [of the corporation so] as to lead to the clear inference" that the officer possessed no honest desire to protect those interests. Patrick v. Allen, 355 F.Supp.2d 704, 715 (S.D.N.Y 2005) (quoting Meredith v. Camp Hill Estates, Inc., 430 N.Y.S.2d 383, 385 (App. Div. 1980)). In addition, the business judgment rule protects corporate decisions made within the scope of standard business judgments, unless the decision resulted from fraud, self-dealing, or bad faith. See Patrick, 355 F.Supp.2d at 710 (defining New York's business judgment rule as the presumption that a corporation's director acts with good faith and in a corporation's best interest). Generally, courts in New York uphold claims of breach of fiduciary duty based on alleged corporate waste where plaintiff proves some specific conduct of defendant caused the waste. See id. at 715 (upholding plaintiff's claims based on defendants' failure to negotiate a sale of mutual property and lease of the property below market value); see Amfesco Indus., Inc. v. Greenblatt, 568 N.Y.S.2d 593 (App. Div. 1st Dep't 1991) (finding waste and

---

[8] Plaintiff alleges that Kugel's "malfeasance and misfeasance" breached his fiduciary duty "to act in the best interests of the corporations and not to waste, divert, or dissipate corporate assets or engage in self-dealing at . . . the corporations' expense." (Compl. ¶ 53.) Although New York courts have treated allegations of corporate waste separate from breach of fiduciary duty claims, plaintiff in the instant case relies on alleged corporate waste to establish both breach and injury for breach of fiduciary duty. See Patrick v. Allen, 355 F.Supp.2d 704, 714 (S.D.N.Y 2005) ("Plaintiff's claim of waste constitutes a cause of action separate from his breach of fiduciary duty claim.").

mismanagement of corporate assets by corporate directors' specific fraudulent conduct). Plaintiff's complaint fails to establish that Kugel's actions were fraudulent, to further self-dealing, or taken in bad faith.

Plaintiff's complaint relies on Kugel's general disappearance, Kugel's email statement indicating a lack of corporate assets, and Kugel's failure to report under the Bylaws to establish that he has failed to fulfil his fiduciary duties. Compl. ¶ 50-51. Though Kugel has not responded in this matter, his emails do not establish that he has abandoned operation of the corporations. Compl. ¶ 22. Kugel's email statements reveal his financial inability to repay plaintiff's loan, but this does not prove that Kugel acted fraudulently, in bad faith, contrary to corporate interests, or for Kugel's own personal gain. Id. Finally, plaintiff does not allege that Kugel's failure to report (the only specific breach alleged) directly caused corporate waste. Plaintiff's derivative claim also fails because he failed to plead actual injuries. See Alcantara, 183 F.3d at 155 ("Even when a default judgment is warranted based on a party's failure to defend, the allegations in the complaint, with respect to the amount of damages are not deemed true."). Besides the single document purported to represent International's $1.68 million in receivables at the time of plaintiff's investment, plaintiff offers no other evidence that the Court may use to confirm the alleged $2 million valuation of MII and International. Compl. ¶ 12, Exh. A. This value is based solely on plaintiff's belief that Kugel gave an honest and correct valuation of the corporate assets.[9] Compl. ¶ 51. As plaintiff has failed to plead facts sufficient to establish the second and third elements of a claim for breach of fiduciary duty, it is respectfully recommended that the Court should deny plaintiff's motion for a default judgment for breach of fiduciary duty, individually and derivatively.

---

[9]Moreover, holding an inquest to establish a reasonable basis for damages would be futile as plaintiff also seeks an accounting to ascertain damages from the defaulting defendants in this lawsuit. (Compl. ¶¶ 61-65.)

Without proof sufficient to find defendant liable for breach of fiduciary duty, the Court need not address plaintiff's requested equitable relief, specifically enjoining Kugel from causing further waste and Kugel's removal as corporate officer. Moreover, under New York law, punitive damages demand a high level of moral culpability and are not available where a plaintiff only alleges private wrongs. See Cortes v. 3A N. Park Ave Rest Corp., 998 N.Y.S.2d 797, 800-01 (N.Y. Sup. 2014) ("Claims for punitive damages were dismissed upon the *prima facie* motion based upon the failure to plead egregious or malicious conduct which would warrant such recovery."). Here, plaintiff's allegation of defendant's general "malfeasance and misfeasance" does not rise to the level of egregious conduct required to find a breach of fiduciary duty. Thus, the Court should not award punitive damages in this matter.

C.  Accounting

Plaintiff seeks an accounting of defendants' records and the corporations' financial affairs as a shareholder in the two New York corporations, separate and apart from his claims for breach of contract and fiduciary duty.[10] Compl. at ¶ 14. Under N.Y. BCL §§ 624(d) and (f), a shareholder has the right to request that the New York State Supreme Court order a corporate officer to allow the shareholder to inspect corporate minutes and records. Courts in New York treat requests for equitable accountings as distinct from the statutory relief provided by the N.Y. BCL. See Zyskind v. Facecake Mktg. Techs., Inc., 973 N.Y.S.2d 34, 37 (App. Div. 1st Dep't 2013) (holding that the statutory right to inspection of corporate books and records and an accounting are not the same). To establish a cause of action for an accounting in New York, plaintiff must show: "(1) relations of a mutual and confidential nature; (2) money or property entrusted to the defendant imposing upon him a burden of accounting; (3) that there is no adequate legal remedy; and (4) in some cases,

---

[10] The Court applies New York law to plaintiff's accounting claim for the reasons stated in Section I.B., titled "Breach of Fiduciary Duty."

a demand for an accounting and a refusal." Associated Mortg. Bankers, Inc. v. Calcon Mut. Mortg. LLC, 159 F.Supp.3d 324, 338 (E.D.N.Y. 2016) (quoting Rosa v. TCC Commc'ns, Inc., No. 15 Civ. 1665, 2016 WL 67729, at *7 (S.D.N.Y. Jan. 5, 2016) (internal citations omitted)). Plaintiff's complaint alleges sufficient facts to state a claim for an accounting.

As to the first element, "to sustain an equitable action for accounting under New York law, a plaintiff must show either a fiduciary or confidential relationship with the defendant." Calcon Mut. Mortg., 159 F.Supp.3d at 339 (quoting Leveraged Leasing Admin. Corp. v. PacifiCorp Capital, Inc., 87 F.3d 44, 49 (2d Cir. 1996) (internal citations omitted)). The parties' fiduciary relationship as majority- and minority-shareholders satisfies this element. Plaintiff establishes the second element because he entrusted Kugel to protect his shareholder interests and Kugel failed to fulfill his reporting duties. See MacCartney v. O'Dell, No. 14 Civ. 3925 (NSR), 2016 WL 815279, at *5 (S.D.N.Y. Feb. 29, 2016) (quoting Soley v. Wasserman, 832 F.Supp.2d 221, 237 (S.D.N.Y. 2011)) ("Under New York law, a plaintiff seeking an accounting . . . must allege . . . a fiduciary relationship . . . and a breach of that fiduciary duty by the defendant"). Plaintiff's failure to state a claim for breach of fiduciary duty means he has no other adequate legal remedy at law, satisfying the third element. See Unitel Telecard Distribution Corp. v. Nunez, 936 N.Y.S.2d 17, 18 (App. Div. 1st Dep't 2011) (affirming that defendant-shareholder's counterclaim for an accounting was allowed because his pleadings did not prove an enforceable contract that provides a legal remedy). Finally, plaintiff's complaint alleges he requested financial information from Kugel on multiple occasions, thereby satisfying the fourth element. Compl. ¶ 63. Therefore, it is respectfully recommended that the Court should grant plaintiff an accounting of defendants' corporate assets.

## III.    Damages

"[I]t is well established that '[w]hile a party's default is deemed to constitute a concession

of all well pleaded allegations of liability, it is not considered an admission of damages.'" <u>Cement & Concrete Workers Dist. Council Welfare Fund v. Metro Found. Contractors, Inc.</u>, 699 F.3d 230, 234 (2d Cir. 2012) (citation omitted); <u>See also</u> <u>Credit Lyonnais Sec. (USA), Inc.</u>, 183 F.3d at 155 ("Even when a default judgment is warranted based on a party's failure to defend, the allegations in the complaint with respect to the amount of the damages are not deemed true.") "While the court must ensure that there is a basis for the damages specified in the default judgment, it may, but need not, make the determination through a hearing." <u>United Food & Commercial Workers Local 348 Pension Fund v. Franklin Poly Corp.</u>, 12-CV-5837 (MKB)(VMS), 2013 WL 4525658, at *6 (E.D.N.Y. Aug. 27, 2013) (internal citations and alterations omitted). On a motion for a default judgment, a plaintiff has the burden to prove damages to the Court with "reasonable certainty." <u>Credit Lyonnais Secs. (USA), Inc.</u>, 183 F.3d at 155 (citing <u>Transatlantic</u>, 109 F.3d at 111).

A. <u>Breach of Contract Damages</u>

As California law controls plaintiff's claim for breach of contract, so too, California law controls the calculations of damages that plaintiff is entitled to based on defendant's breach of contract. The standard measure of damages under a breach of contract claim, "is the amount which will compensate the party aggrieved for all the detriment proximately caused thereby, or which, in the ordinary course of things, would be likely to result therefrom." <u>Bmo Harris Bank N.A. v. Singh</u>, No. 16-CV-482 (DAD)(SAB), 2016 WL 5798841, at *7 (E.D. Cal. Oct. 4, 2016) (citing Cal. Civ. Code § 3300 (West 2018)). Damages for a breach of contract are only recoverable when they are "clearly ascertainable in both their nature and origin." <u>Id.</u> (citing Cal. Civ. Code § 3301).

Plaintiff requests breach of contract damages in the amount of $132,665.04, consisting of: (1) $100,000 in unpaid principal; (2) $2,612.83 in contractual interest; (3) $14,906.54 in default interest; (4) $14,365.34 in attorney's fees; and (5) $780.33 in costs. To support his request for

damages, plaintiff submits the following documents: copies of the two checks plaintiff executed to Kugel in the amounts of $80,000 and $20,000 ECF No. 12-13, Compl. ¶¶ 19-20; the Declaration of Joseph Zelmanovitz, plaintiff's attorney ECF No. 12-12; and the Declaration of plaintiff, Eli Eichenblatt, ECF No. 12-1.  These submissions provide a sufficient basis for the Court to determine damages on Kugel's breach of contract without a hearing.

### i.    Principal

The Court finds that Kugel failed to pay plaintiff the $100,000 principal value of the Note and that plaintiff is entitled to $100,000 in damages. See Reflex Sales Grp., Inc. v. Boucher, No. 13-CV-05300 (BRO)(AGR), 2014 WL 12694256, at *3 (C.D. Cal. Apr. 17, 2014) (finding the plaintiff showed damages of $75,000 with a promissory note executed by defendant for $75,000 and defendant's failure to repay the unpaid balance when contractually due).

### ii.    Contractual Interest

A contractually stipulated interest rate remains chargeable "until the contract is superseded by a verdict or other new obligation." Philips 66 Co. v. California Pride, Inc., No. 16-CV-1102 (LJO)(SKO), 2017 WL 2875736, at *12 (E.D. Cal. July 6, 2017), adopted, 2017 WL 3382974 (E.D. Cal. Aug. 7, 2017) (citing Cal. Civ. Code § 3289(a)). The terms of the Note explicitly and repeatedly states that the contractual interest rate must be calculated using a 360-day year. The daily interest rate for the defaulted installment is $7.14 per day ($100,000 x .0257 / 360 = 7.138), which is then multiplied by the number of days defaulted (here, 366) to reach a total contractual interest damages award of $2,612.83. Thus, plaintiff correctly calculated contractual interest of $2,612.83 from the date of the Note (November 18, 2015) until one year later (November 18, 2016) at the 2.57% per annum interest rate for a 360-day year as provided by the Note. Pl. Motion ¶ 32.

a.   Default Interest

The Note further provides for default interest of 15% per annum on unpaid principal should defendants fail to make the initial and final contractual payments to plaintiff. Compl. ¶ 22. To calculate default interest of $14,833.33, plaintiff used the date of Kugel's first email (November 22, 2016) as an anticipatory repudiation date.[11] Pl. Motion ¶ 32. By doing so, plaintiff sought to trigger application of the 15% default interest on the full $100,000 principal from the date of repudiation. Compl. ¶ 22; Pl. Memo of Law at 5. Under California law, "[w]hen a promisor repudiates a contract, the injured party faces an election of remedies: he can treat the repudiation as an anticipatory breach and immediately seek damages for breach of contract, . . ., or he can treat the repudiation as an empty threat, wait until the time for performance arrives, and exercise his remedies for actual breach if a breach does in fact occur at such time." Clear Channel Outdoor, Inc. v. Bently Holdings California LP, No. C-11-2573 (EMC), 2011 WL 6099394, at *8 (N.D. Cal. Dec. 7, 2011) (citing Taylor, 539 P.2d at 430). Plaintiff brought suit on January 31, 2017, more than one month after December 18, 2016, when there was a contractual default on the initial payment. Thus, plaintiff elected to wait for the actual breach on the initial $50,000 payment. Whereas, because plaintiff commenced this action before defendants breached the final payment due date, plaintiff elected to treat defendants' repudiation as the date of defendants' breach for the final $50,000 payment. However, plaintiff erroneously applied the November 22, 2016 repudiation date to both $50,000 installments when calculating the interest owed on defendants' default. Pl. Motion ¶ 33.

---

[11] Under California law, a party's repudiation of a contractual agreement may be express or implied. See Kuzmak, 275 F. Supp. 2d at 1130 ("An anticipatory breach occurs when a party expressly and unequivocally refuses to perform, or when its conduct places the party in a position where it cannot substantially perform."). Although Kugel made non-specific assurances that he would repay plaintiff at some unspecified future time, Kugel explicitly repudiated his repayment obligations when he wrote to plaintiff: "I . . . intend to pay you in full as soon as I can, unfortunately at the moment my situation is not able to facilitate such"; "It is obviously unrealistic for me to think that I can return the money to . . . you in lump sum right away"; and "I have been told that this might take a while." (Compl. ¶ 24.)

To calculate default interest on the initial $50,000 payment, the Court applies the contractual default date provided in the Note.[12] The Court calculates the total default interest on the initial $50,000 payment from December 18, 2016 (the contractual initial default date) to May 15, 2018 (the date of this Report) at a 15% per annum interest for a 360-day year to equal $10,687.50.[13] However, by bringing suit before the final default date on the second $50,000 payment, the date of repudiation applies for default interest calculations on the second payment.[14] See First Nat. Mortg. Co. v. Fed. Realty Inv. Tr., No. C-03-2013 (RMW), 2005 WL 2206698, at *7 (N.D. Cal. Sept. 12, 2005) (finding that, to calculate interest damages, the May 11, 2001 date of defendant's letter to plaintiff was the date of repudiation because plaintiff brought suit without waiting for the contractual default to arise). Thus, the Court calculates the default interest on the final $50,000 payment from November 22, 2016 (the date of repudiation) to May 15, 2018 (the date of this Report) at a 15% per annum interest for a 360-day year to equal $11,229.16.[15] The Court finds that plaintiff may recover $21,916.66 in total default interest.[16]

b.  Interim Contractual Interest

Plaintiff's erroneous reliance on the November 22, 2016 repudiation date to calculate the default interest on the initial $50,000 payment means that the contractual interest on the initial $50,000 payment due must be recalculated. Plaintiff states that the contractual interest due for the days between November 19, 2016 and November 21, 2016 totals $10.71 and $62.50.[17] On the first

---

[12] Plaintiff offers no legal support for the use of the November 22, 2016 email as an anticipatory repudiation when the initial contractual default had already occurred.

[13] The equation reads: $50,000 x .15 / 360 = 20.83333333333333 x 513 days defaulted = $10,687.50.

[14] The Court also considered the implications of the Note's Late Payment Penalty provision. This provision provides for separate penalties of "interest of fifteen percent (15%) on the unpaid principal" after the initial default date (December 18, 2016) and the final default date (June 17, 2017).

[15] The equation reads: $50,000 x .15 / 360 = 20.83333333333333 x 539 days defaulted = $11,229.16.

[16] As the Court can only calculate the default interest through to the date of this Report, plaintiff's counsel should be required to submit a calculation of the default interest that accrues from May 16, 2018 through to the date of judgment.

[17] Plaintiff erroneously lists these dates as November 19, 2017 – November 21, 2017.  In fact, additional contractual interest should be applied to the days from November 19 – 21, **2016**, before default interest was triggered.

$50,000, additional contractual interest at 2.57% applies from November 19, 2016 (the day after the initial payment date) through December 17, 2016 (the day before the initial default date), for a total of $103.51.[18] On the second $50,000, plaintiff correctly calculated additional contractual interest from November 19, 2016 to November 21, 2016 (the day before the repudiation date), for a total of $10.71.[19] Thus, plaintiff may recover an additional $110.65 in contractual interest.

> *iii.*    *Attorney's Fees & Costs*

Although the Note in this matter provides for the recovery of "attorneys' fees equal to 25% of the amount due" on default, Compl. ¶ 33, plaintiff does not seek such fees. California courts typically use the lodestar method to calculate reasonable attorney's fees. See TBK Bank, SSB v. Singh, No. 17-CV-00868 (LJO)(BAM), 2018 WL 1064357, at *7 (E.D. Cal. Feb. 23, 2018); see also Johnston Farms v. Yusufov, No. 17-CV-00016 (LJO)(SKO), 2017 WL 6571527, at *11 (E.D. Cal. Dec. 26, 2017). A court multiplies "the number of hours . . . reasonably expended on the litigation by a reasonable hourly rate." Camacho v. Bridgeport Fin., Inc., 523 F.3d 973, 978 (9th Cir. 2008) (citation omitted). The Supreme Court dictates that courts should consider prevailing market rates in the relevant community, or the forum where the district court sits, to determine a reasonable hourly rate. See Blum v. Stenson, 465 U.S. 886, 895 (1984); see also Gonzalez v. City of Maywood, 729 F.3d 1196, 1205 (9th Cir. 2013) (citing Dang v. Cross, 422 F.3d 800, 813 (9th Cir. 2005)). The relevant community here for purposes of determining a reasonable hourly rate is the Eastern District of New York.

Prevailing hourly rates for attorneys in the Eastern District of New York typically range "from $300 to $450 for partners [and] $200 to $300 for senior associates." Pierre v. Planet Auto., Inc., No. 13-CV-0675 (MKB)(JO), 2018 WL 1385906, at *4 (E.D.N.Y. Feb. 21, 2018), adopted,

---

[18] The equation reads: $50,000 x .0257 / 360 = 3.569444444444444 x 29 days = $103.51.
[19] The equation reads: $50,000 x .0257 / 360 = 3.569444444444444 x 3 days = $10.71.

2018 WL 1385882 (E.D.N.Y. Mar. 19, 2018) (quoting Tito v. Rubin & Rothman, LLC, 12–CV–3464 (JMA), 2014 WL 1092845, at *2–3 (E.D.N.Y. Mar. 18, 2014)). In more complex matters, experienced partners are awarded between $300 and $450 per hour. See Piedra v. Ecua Rest., Inc., No. 17-CV-3316 (PKC)(CLP), 2018 WL 1136039, at *18 (E.D.N.Y. Jan. 31, 2018), adopted, 2018 WL 1135652 (E.D.N.Y. Feb. 28, 2018) (applying the lodestar method to a FLSA default judgment).

Joseph Zelmanovitz, a partner with approximately thirty-seven years of experience, billed plaintiff at $500 per hour. Abraham Neuhaus, an associate with approximately six years of experience, billed plaintiff at $350 per hour. Plaintiff submitted contemporaneous time records detailing the work done by each attorney, the hours spent, and the dates when work was performed. (ECF No. 12-12.) Although plaintiff's attorneys seek hourly rates on the high end of the spectrum, the total amount requested ($14,365.34) is significantly less than the 25% specified in the Note. Compl. ¶ 33. In light of this provision in the Note, the Court finds the requested fees reasonable. Therefore, I respectfully recommend that the Court should grant plaintiff's request for $14,365.34 in attorneys' fees.

Plaintiff's request for reasonable costs should also be granted. Plaintiff seeks an award of $780.33 in costs, which includes $400 for the Court's filing fee, $353.85 for service of process, and $26.48 for a single FedEx invoice charge. (ECF No. 12-12, ¶ 14; ECF No. 12-15.) The Note provides for cost recovery and under Cal. Civ. Code § 1717, costs incurred to enforce a contract are recoverable when a contract provides explicitly for their reclamation. It is respectfully recommended that the Court should grant plaintiff these requested costs.

**Summary of Money Damages for Defendants' Breach of Contract**

The Court respectfully recommends the following damages should be awarded to plaintiff:

| Dates | Type & Interest Calculation | Amount |
|---|---|---|
| 11/18/2015 | Principal | $100,000.00 |
| 11/18/2015 - 11/18/2016 | Contractual interest of 2.57% at 360-days/year | $2,612.83 |
| 11/19/2016 – 12/17/2016 | Added contractual interest of 2.57% at 360-days/year on the first $50,000 | $103.51 |
| 11/19/2016 – 11/21/2016 | Added contractual interest of 2.57% at 360-days/year on the second $50,000 | $10.71 |
| 12/18/2016 – 5/1/2018 | Default interest of 15% at 360-days per year on the first $50,000 (December 18, 2016–May 15, 2018) | $10,687.50 |
| 11/22/2016 – 5/1/2018 | Default interest of 15% at 360-days per year on the second $50,000 (November 22, 2016–May 15, 2018) | $11,229.16 |
| 6/15/2017 | Attorney's Fees | $14,365.34 |
| 6/15/2017 | Costs | $780.33 |
| | **TOTAL** | **$139,789.38** |

B.  Specific Performance and Declaratory Judgment

California district courts have decreed specific performance of a contract when: "(1) its terms are sufficiently definite; (2) consideration is adequate; (3) there is substantial similarity of the requested performance to the contractual terms; (4) there is mutuality of remedies; and (5) plaintiff's legal remedy is inadequate." Datatel Sols., Inc. v. Keane Telecom Consulting, LLC, No. 12-CV-1306 (TLN)(EFB), 2016 WL 748102, at *5 (E.D. Cal. Feb. 26, 2016), adopted, 2016 WL 6088345 (E.D. Cal. Mar. 31, 2016) (quoting Union Oil Co. of Cal. v. Greka Energy Corp., 80 Cal.Rptr.3d 738, 741 (Ct. App. 2008) (internal citations omitted)). The I.C. Agreement granted plaintiff fifteen-percent (15%) equity in MII, and Kugel's default under the Note provided plaintiff with an additional ten-percent (10%) interest in MII. Compl. ¶ 22. While MII has been dissolved,

International adopted and ratified these same equity interests through International's Organizational Action. Compl. Exh. E. Thus, plaintiff seeks a declaratory judgment that he is a twenty-five percent (25%) shareholder in International and specific performance requirement compelling defendants to issue stock certificates to such affect. Compl. ¶¶ 40, 44-45. The grant of plaintiff's requested equitable relief would serve to protect his expectation interests under the Note's explicit default penalty terms. Compl. Exh. D, ¶ 1. Furthermore, the Bylaws provide for the issuance of stock certificates to each shareholder. Compl. Exh. E, ¶ 4.1. Therefore, the Court respectfully recommends that plaintiff should be granted a declaratory judgment that he owns twenty-five percent (25%) of shares in International and that defendants should be ordered to issue plaintiff stock certificates to that effect.

## CONCLUSION

For the reasons set forth above, it is respectfully recommended that plaintiff's motion for a default judgment should be granted in part and denied in part. The Court should grant plaintiff a default judgment for his breach of contract claim and resulting damages, and enter judgment against defendants, jointly and severally, for damages totaling $139,789.38. It is further recommended that plaintiff should be granted a declaratory judgment that he owns twenty-five percent (25%) of the shares in International and that an Order be issued requiring defendants to issue stock certificates to plaintiff to that effect. I respectfully recommend that the Court should grant plaintiff's accounting claim and should order defendants to produce their records to plaintiff. Finally, it is respectfully recommended that plaintiff's motion for a default judgment on his breach of fiduciary duty claim should be denied.

Plaintiff is hereby ordered to serve a copy of this Report upon defendants at their last known addresses and to file proof of service with the Court forthwith.

24

## FILING OF OBJECTIONS TO REPORT AND RECOMMENDATION

Pursuant to 28 U.S.C. § 636(b)(1) and Rule 72(b) of the Federal Rules of Civil Procedure, the parties shall have fourteen days from service of this Report to file written objections.  See Fed. R. Civ. P. 6. Such objections shall be filed with the Clerk of the Court. Any request for an extension of time to file objections must be made within the fourteen-day period. Failure to file a timely objection to this Report generally waives any further judicial review. Marcella v. Capital Dist. Physicians' Health Plan, Inc., 293 F.3d 42 (2d Cir. 2002); Small v. Sec'y of Health and Human Servs., 892 F.2d 15 (2d Cir. 1989); see Thomas v. Arn, 474 U.S. 140 (1985).

SO ORDERED.


                                                 _____/S/_____
                                                 LOIS BLOOM
                                                 United States Magistrate Judge

Dated: May 15, 2018
       Brooklyn, New York

25